UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
In Re: PLATINUM PARTNERS VALUE           :
ARBITRAGE FUND L.P. (IN OFFICIAL         :
LIQUIDIATION), et al.                    :
                                         :    OPINION AND ORDER
                     Debtors in Foreign  :
                     Proceedings.        :
                                         :
-----------------------------------------:
                                         :
COHNREZNICK LLP,                         :
                                         :
                                         :
                     Appellant,          :
                                         :    18cv5176 (DLC)
           -v-                           :
                                         :
FOREIGN REPRESENTATIVES OF PLATINUM      :
PARTNERS VALUE ARBITRAGE FUND L.P. (IN   :
OFFICIAL LIQUIDATION) and FOREIGN        :
REPRESENTATIVES OF PLATINUM PARTNERS     :
VALUE ARBITRAGE FUND (INTERNATIONAL)     :
LIMITED (IN OFFICIAL LIQUIDATION),       :
                                         :
                     Appellees.          :
                                         :
-----------------------------------------X

APPEARANCES:

For the appellant:
David M. Cheifetz
James Lawrence Bernard
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038

For appellee Foreign Representatives of Platinum Partners Value
Arbitrage Fund (International) Limited (In Official
Liquidation):
Bruce R. Grace
Jack B. Gordon
Lewis Baach Kaufmann Middlemiss PLLC
1899 Pennsylvania Ave., NW, Suite 600
Washington, DC 20006

For appellee Foreign Representatives of Platinum Partners Value
Arbitrage Fund L.P. (In Official Liquidation):
Warren E. Gluck
Barbra R. Parlin
Holland & Knight LLP
31 West 52nd Street
New York, New York 10019

DENISE COTE, District Judge:

This appeal arises out of the liquidations of a hedge fund
incorporated in the Cayman Islands, Platinum Partners Value
Arbitrage Fund L.P. (the "Master Fund") and its feeder funds,
Platinum Partners Value Arbitrage Fund (International) Limited
(the "International Fund"), and Platinum Partners Value
Arbitrage Fund Ltd. ("Intermediate Fund," and, collectively, the
"Funds"). A former auditor of the Funds, CohnReznick LLP
("CohnReznick"), has made a motion under Rule 8007(b), Fed. R.
Bankr. P., for a stay pending appeal of an order of the
bankruptcy court requiring its compliance with a subpoena in a
Chapter 15 bankruptcy proceeding. For the following reasons,
the motion for a stay pending appeal is denied.

The facts of this appeal are exhaustively discussed in the
bankruptcy court's thorough and well-reasoned opinion, In re
Platinum Partners Value Arbitrage Fund L.P. (In Official
Liquidation), 583 B.R. 803 (Bankr. S.D.N.Y. 2018) ("April
Order"), and therefore this decision describes only those facts
particularly relevant here. Each of the three Funds is
organized under the laws of the Cayman Islands and was managed

by Platinum Management (NY) LLC ("Platinum Management"), which is headquartered in New York. In August 2016, following their failure to honor redemption requests from investors in a timely manner, the Master Fund and International Fund were placed into liquidation by order of the Grand Court of the Cayman Islands.

On October 18, 2016, two months after the liquidations began, the court-appointed liquidators of the Master Fund and International Fund ("Liquidators") sought recognition of the Cayman Islands liquidation proceedings for the two Funds in this district's bankruptcy court as foreign main proceedings under Chapter 15 of the Bankruptcy Code. The bankruptcy court consolidated the two cases on October 25, 2016, and on November 22, 2016, without objection, granted recognition of the two liquidations as foreign main proceedings.[1]

On December 14, 2016, a federal grand jury in the Eastern District of New York indicted certain senior executives of Platinum Management on charges of conspiracy, securities fraud, investment advisor fraud, and wire fraud in connection with their management of the Funds. On December 19, 2016, the Securities and Exchange Commission ("SEC") filed a complaint

---

[1] The Intermediate Fund was placed into liquidation in the Cayman Islands in 2017. Its Chapter 15 proceeding was consolidated with the other Platinum Partners proceedings on September 7, 2017, and its Cayman Islands liquidation was recognized as a foreign main proceeding on October 12, 2017.

against Platinum Management and the indicted individuals seeking relief for their allegedly fraudulent activities. The indicted individuals have apparently asserted their Fifth Amendment rights when questioned in proceedings concerning Funds-related matters.

Under Cayman Islands law, the Liquidators are obligated to collect, realize, and distribute the assets of the Funds, and are empowered to investigate the promotion, business, dealings, and affairs of the Funds, including the causes of their failure. Pursuant to the bankruptcy court's November 22, 2016 recognition order, the Liquidators were authorized to "examine witnesses, take evidence, and seek the production of documents within the territorial jurisdiction of the United States concerning the assets, affairs, rights, obligations or liabilities of the [f]unds, the [f]unds affiliates and the [f]unds subsidiaries."

Appellant CohnReznick is a New York City firm that provides accounting, assurance, tax, and business advisory services. CohnReznick was engaged to provide audit services to the Funds for their last two full years of activity: 2014 and 2015. CohnReznick provided an audit letter for the 2014 year, but its services were terminated prior to the completion of the 2015 audit. CohnReznick was responsible for auditing roughly $1.2 billion in assets managed by the Funds.

The engagement letters between each Fund and CohnReznick contain an arbitration clause ("Arbitration Clause"), which reads in relevant part:

> <u>Any dispute, controversy, or claim</u> arising out of or relating to the services or the performance or breach of the Agreements (including disputes regarding the validity or enforceability of this Agreement) or in any prior services or agreements between the parties <u>shall be finally resolved by arbitration</u> <u>in accordance with the International Institute for Conflict Prevention and Resolution ("IICPR") Rules for Non-Administered Arbitrations</u> . . . . Such arbitration shall be binding and final. In agreeing to arbitration, the parties acknowledge that in the event of any dispute (including a dispute over fees) the parties are giving up the right to have the dispute decided in a court of law before a judge or jury and instead the parties are accepting the use of arbitration for resolution.

(Emphasis supplied.) The engagement letters also provide that they are to be governed by New York law.

As part of the investigation into the affairs of the Funds, the Liquidators sought documents from CohnReznick regarding its work for the Funds. Although CohnReznick produced some documents (described as the property of the Funds), it did not provide others, including its workpapers for the engagement. On August 31, 2017, the International Fund liquidators served a subpoena upon CohnReznick.[2] The subpoena sought, among other things, engagement documents, communications, representations,

---

[2] The Master Fund Liquidators consented to the issuance of the subpoena by the International Fund Liquidators.

invoices, and workpapers (collectively, "Workpapers").  After negotiations over the scope of the subpoena failed, on January 25, 2018, the International Fund Liquidators filed a motion to compel, in which the Master Fund Liquidators joined.  The bankruptcy court, after full briefing and oral argument, issued the April Order granting the motion to compel on April 17, 2018. 583 B.R. 803.

On May 1, CohnReznick timely filed a notice of appeal.  In its May 15 Statement of Issues on Appeal, CohnReznick asserts that the "central" issue is:

> Whether a foreign debtor's representatives can use chapter 15 for wide-ranging discovery to investigate potential claims against a U.S. entity where the foreign representatives

> (i) are bound by the debtor's agreements with the U.S. entity to arbitrate any such claims under rules providing for only limited discovery and

> (ii) lack the power under the laws of their home jurisdiction to take the requested discovery.

At a conference on May 23, which followed another round of briefing and oral argument, the bankruptcy court denied motions by CohnReznick to stay the April Order and to certify the order for direct appeal to the Second Circuit.  In re Platinum Partners Value Arbitrage Fund L.P., No. 16-12925-SCC, Dkt. 88 (Bankr. S.D.N.Y. May 23, 2018) ("Stay Opinion").  Those rulings were memorialized in two orders dated May 31.

In the Stay Opinion, the bankruptcy court addressed the four factors relevant to whether a stay should be granted pending appeal. On irreparable harm, the bankruptcy court found "that any potential harm to CohnReznick in proceeding with discovery while its appeal is pending fails to overcome the weight of the other three factors," and that, "as a practical matter, this circumstance is no different from many other situations in which a stay is requested to free a party from doing something it maintains it should not be required to do or to be affected by." Id. at 96-97. On potential harm to other parties, the bankruptcy court said that "[w]ere a stay to be imposed, the Liquidators' ability to timely administer the liquidation of the Funds would be affected," and that CohnReznick's arguments for lack of harm to the Liquidators were either "patently untrue" or "without any basis of fact." Id. at 97-98. It further found that "the Master Fund Liquidators have a need for CohnReznick's audit workpapers in pursuing their wide-ranging investigation into the alleged one-billion-dollar fraud involving approximately one billion dollars in assets that were audited by CohnReznick directly before the commencement of the Funds' liquidation proceedings." Id. at 99. On substantial probability of success on appeal, the bankruptcy court concluded that CohnReznick "has failed to demonstrate a substantial possibility of success on appeal." Id. at 102. Finally, with

respect to the public interest, the bankruptcy court decided that "[t]he public interest here is best served by requiring compliance with the discovery order and permitting the Liquidators to continue their investigation unfettered so that they may pursue timely claims on behalf of creditors of the funds prior to the running of applicable statutes of limitations."  Id. at 103-04.  The bankruptcy court declined to set a schedule for production, however, "because CohnReznick was not given notice" of the Liquidators request, and because the bankruptcy court did not "want to be perceived as in any way pressuring the decision of whatever court you go to next."

The appeal from the April Order was assigned to this Court on June 8.  A June 11 Order set a briefing schedule, requiring all briefing on the merits appeal to be completed by July 16. On June 12, the parties each filed letters addressing a contemplated motion to stay the effect of the April Order pending appeal.  A June 13 Order directed the filing of simultaneous briefs on June 18 and set oral argument on the motion to stay for June 20.[3]

At the June 20 conference, the parties agreed to further expedite briefing on the appeal on the merits from the April

---

[3] No motion has been made in this Court for certification of a direct appeal to the Second Circuit Court of Appeals.

Order.  The briefing on the merits is fully submitted today and
an Order of today denies the appeal.

At the June 20 conference, the Court ordered CohnReznick
immediately to begin to prepare for production of the Workpapers
so that there would be no delay should the bankruptcy court set
a deadline for that production.  CohnReznick represented that a
partial production could begin immediately and the production
could be substantially complete within two weeks of the June 20
conference.  Pursuant to the parties' submissions to the
bankruptcy court on June 21 and June 22, 2018, the bankruptcy
court recently set a deadline of July 16, 2018 for the
production of the Workpapers.

## DISCUSSION

The legal standard for granting a stay pending appeal of a
bankruptcy court order requires application of the familiar
four-factor test:

> (1) whether the stay applicant has made a strong
> showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured
> absent a stay;
>
> (3) whether issuance of the stay will substantially
> injure the other parties interested in the proceeding;
> and
>
> (4) where the public interest lies.

Nken v. Holder, 556 U.S. 418, 426 (2009); see also In re
World Trade Center Disaster Site Litig., 503 F.3d 167, 170

(2d Cir. 2007).  The Second Circuit has held that these

criteria should be applied "somewhat like a sliding scale

. . . more of one excuses less of the other."  Thapa v.

Gonzales, 460 F.3d 323, 334 (2d Cir. 2006) (citation

omitted).[4]  The burden of establishing entitlement to a stay

rests with the appellant.  Nken, 556 U.S. at 433-34.  Each

of the Nken factors will be addressed in turn.

## I.  Likelihood of Success on the Merits

CohnReznick has not shown that it is likely to succeed on

its appeal from the April Order, much less made a strong showing

of a likelihood of success.[5]  The Bankruptcy Court acted well

within its authority in granting the Liquidators' motion to

compel production of the CohnReznick Workpapers.

---

[4] Although there might be some doubt as to whether the Second
Circuit's sliding-scale approach survives decisions such as Nken
and Winter v. Natural Resources Defense Council, Inc., 555 U.S.
7, 20 (2008), in the related context of motions for a
preliminary injunction, the Second Circuit has reaffirmed the
validity of the sliding-scale approach.  See Citigroup Global
Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598
F.3d 30, 37-38 (2d Cir. 2010).  Because the appellants' request
fails regardless of the standard to be applied, it is
unnecessary to address this issue further.

[5] CohnReznick argues that it need only show a "possibility" of
success on appeal.  That standard purports to derive from ACC
Bondholder Gp. v. Adelphia Comm's Corp., 361 B.R. 337, 346
(S.D.N.Y. 2007), which in turn cites Hirschfeld v. Bd. of Elec.
in City of New York, 984 F.2d 35, 39 (2d Cir. 1993).
Hirschfeld required that a possibility of success on the merits
be "substantial," and Nken specifically rejects the mere
"possibility" standard.  Nken, 556 U.S. at 434-35.

The relevant provisions of the bankruptcy laws give the bankruptcy court broad authority to compel discovery in aid of foreign bankruptcy proceedings.  In 2005, Congress added Chapter 15 to the Bankruptcy Code through the Bankruptcy Abuse Prevention and Consumer Protection Act.  Pub. L. No. 109-8, § 801, 119 Stat. 23 (codified at 11 U.S.C. §§ 1501-1532).  In doing so, Congress included an explicit statement of its purposes:

> [t]he purpose of [Chapter 15 of the Bankruptcy Code] is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of:
>
> (1) cooperation between --
>
>    (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>
>    (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2) greater legal certainty for trade an investment;
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4) protection and maximization of the value of the debtor's assets; and
>
> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501.

In aid of these purposes, Chapter 15 provides for the recognition of foreign bankruptcy proceedings in United States courts.  See 11 U.S.C. §§ 1515-1524; see generally In re Fairfield Sentry Ltd., 714 F.3d 127, 132-33 (2d Cir. 2013). Upon recognition of a foreign proceeding, and at the request of the foreign representative, the bankruptcy court is empowered to allow discovery to be taken.  It can "provid[e] for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's affairs, rights, obligations, or liabilities."  11 U.S.C. § 1521(a)(4).  Under § 1521(a)(7), the bankruptcy court may also "grant[] any additional relief that may be available to a trustee," subject to exceptions not applicable here.  11 U.S.C. § 1521(a)(7). Accordingly, it may also authorize foreign representatives to take discovery pursuant to § 542(e) of the Bankruptcy Code, and Federal Rule of Bankruptcy Procedure 2004, each of which provides for discovery of the affairs of a debtor.

The bankruptcy court's April Order authorizing discovery of the Workpapers fits comfortably within this broad grant of powers.  After all, discovery of an auditor's workpapers and related documents and communications for the two-year period immediately preceding a massive business failure of any entity would be highly relevant.  Moreover, the decision by a court to allow discovery is a discretionary one.  See In re Barnet, 737

F.3d 238, 248 (2d Cir. 2013).  Review of a discovery order is for abuse of that discretion.  See In re Lyondell Chem. Co., 585 B.R. 41, 52 (S.D.N.Y. 2018).

Finally, Chapter 15 expresses a strong preference for providing assistance to foreign representatives in appropriate circumstances.  That congressional preference is not to be lightly disturbed.[6]

CohnReznick makes two arguments regarding the merits of the April Order and its likelihood of succeeding with its appeal from that order.[7]  First, it argues that the Arbitration Clause precludes the discovery the Liquidators seek.  Not so.  The Arbitration Clause applies to a "dispute, controversy or claim" between the Funds and CohnReznick.  There is no such pending

---

[6] As the bankruptcy court found, there were other compelling reasons to grant the Liquidators' motion to compel, including that the Funds' assets were largely U.S.-based and held by U.S. subsidiaries, the anticipated lack of cooperation by the Funds' executives in the Liquidators' investigation, and the alleged criminal fraud with respect to the Funds.  April Order, 583 B.R. at 821.  While each of these factors underscores the soundness of the bankruptcy court's exercise of its discretion, even in their absence CohnReznick has failed to show that the bankruptcy court abused its discretion.

[7] While CohnReznick originally resisted production of its Workpapers by arguing principally that a Cayman Islands court would not order them to be produced, and secondarily referred to the Arbitration Agreement, in support of a stay and on appeal it relies principally on the existence of the Arbitration Agreement.

proceeding brought by the Liquidators against CohnReznick.[8]  The
bankruptcy court was clear that she was doing "nothing" to take
away CohnReznick's right to have a dispute heard in an arbitral
forum.[9]  Stay Opinion at 25.  In its submission of June 25,
CohnReznick admits as much.[10]

The subpoena was a request for production of documents from
a witness.  The Liquidators seek the Workpapers to investigate
the affairs of the Funds and in connection with any and all
claims that the Funds' estates may have against any and all
third parties.  As the bankruptcy court observed, "CohnReznick
and its employees are among the most significant witnesses" in
connection with the bankruptcy proceeding and its Workpapers
"are directly material" to that work.  Stay Opinion at 99.

---

[8] It is telling that CohnReznick did not show below that in the
event there were an arbitration between the Liquidators and
CohnReznick, any specific category of documents covered by the
April Order would not be required to be produced.  It is
difficult to imagine how the Workpapers would not be
discoverable in any arbitrated dispute between CohnReznick and
the Funds.

[9] If a claim were filed by the Liquidators against CohnReznick,
then a bankruptcy court would likely apply the pending
proceeding rule.  See In re Enron Corp., 281 B.R. 836, 840
(Bankr. S.D.N.Y. 2002) ("the well-recognized rule [is] that once
an adversary proceeding or contested matter is commenced,
discovery should be pursued under the Federal Rules of Civil
Procedure and not by Rule 2004.").  Through that mechanism, the
bankruptcy and arbitration regimes are, in the words of the
Liquidators, "harmonized."  Stay Opinion at 54.

[10] As CohnReznick's June 25 brief acknowledges, "To be sure, the
[April] Order does not prevent CohnReznick from having any
claims by the Liquidators heard in an arbitral forum."

Taken to its logical conclusion, if CohnReznick's argument prevailed, an accountant's workpapers would never be discoverable when the accountant's engagement letter contained an arbitration clause.  Unsurprisingly, CohnReznick cites no support for that sweeping proposition.  As the Liquidators observe, an arbitration clause does not immunize a witness from civil discovery.  Again, the bankruptcy court was entirely correct when it observed that its discovery order did not violate the Arbitration Clause.  Stay Opinion at 23.

CohnReznick's primary response is to urge this Court to follow In re Daisytek, Inc., 323 B.R. 180 (N.D. Tex. 2005).  Daisytek does not alter the preceding analysis.

In Daisytek, a bankruptcy trustee sought an examination of Ernst & Young ("E&Y"), the debtor's auditor, explaining that the examination might support future claims against E&Y for accounting malpractice.  Id. at 183.  E&Y resisted, arguing that such discovery would circumvent the arbitration provisions in its engagement agreement with the debtor.  The district court remanded the case with instructions to the bankruptcy court to determine whether the trustee was seeking to bring state-law accounting malpractice claims based on pre-petition conduct or an action to avoid preferential and fraudulent transfers.  It reasoned that the former could be brought in a forum other than a bankruptcy court, and the latter derived exclusively from the

Bankruptcy Code. If the proceeding derived exclusively from the Bankruptcy Code, the bankruptcy court would have discretion to refuse to enforce an arbitration agreement and order discovery. By contrast, if the claim was a state law claim, the arbitration clause would govern, and discovery related to those claims would have to proceed in accordance with an arbitration. Id. at 187-88. The approach taken in Daisytek is not persuasive and has been criticized,[11] but it is in any event inapposite. The Liquidators' request here is not analogous to the trustee's request in Daisytek. It seeks the documents pursuant to Chapter 15 and to investigate the affairs of the Funds and any claims the Liquidators might bring against any third parties.

CohnReznick makes one more attempt to show that it may succeed in overturning the April Order. It contends that the Liquidators would be unable to obtain the Workpapers under Cayman Islands law. Even if CohnReznick were correct (the bankruptcy court did not find it necessary to resolve that issue),[12] neither principles of comity nor any foreign discoverability requirement weigh against granting the

---

[11] See In re Millennium Lab Holdings II, LLC, 562 B.R. 614, 631 (Bankr. D. Del. 2016); In re Friedman's, Inc., 356 B.R. 779, 783-84 (Bankr. S.D. Ga. 2005).

[12] The bankruptcy court examined with care the parties' submissions regarding Cayman Islands law and found that it had "not been provided with evidence sufficient to enable it to conclude that Cayman law prohibits the discovery sought in the Subpoena." April Order, 583 B.R. at 815.

Liquidators' motion to compel.  In the analogous context of 28 U.S.C. § 1782 proceedings, the foreign discoverability rule has been roundly rejected, and this Court declines to impose such a rule for Chapter 15 proceedings.  See Mees v. Buiter, 793 F.3d 291, 303 (2d Cir. 2015).  The bankruptcy court's April Order was issued pursuant to the statutory authorization for discovery provided in Chapter 15 and the ancillary provisions of the Bankruptcy Code and Rules.  It did not issue its order pursuant to Cayman Islands law.

CohnReznick argues that a bankruptcy decision, In re Hopewell, 258 B.R. 580 (Bankr. S.D.N.Y. 2001), requires bankruptcy courts to determine whether documents would be discoverable under foreign law.  Not so.  Hopewell was issued before the passage of the law creating Chapter 15, which provided new statutory authority for bankruptcy courts to authorize discovery in cross-border insolvency cases.  Hopewell involved a pending arbitration proceeding, and thus implicated the pending proceeding rule.  Id. at 582.  One of the key factors undergirding the decision in Hopewell was the distinction between locating and remitting assets, which is what the Liquidators seek to do here, and the administration thereof, which was what the debtor sought to do in Hopewell.  Id. at 584-85.  As Hopewell notes, even the predecessor to Chapter 15, 11 U.S.C. § 304, "would likely allow the court in an appropriate

case to provide discovery in aid of the claim liquidation efforts of a foreign representative." Id. at 585.  And, Hopewell notes that the law that eventually became Chapter 15 would "specifically permit a recognized foreign representative to examine witnesses and take evidence regarding the debtor's assets, affairs, obligations, or liabilities." Id. (citation omitted).[13]

Even if a Cayman Islands court would not itself order production of the documents, Cayman Islands courts are receptive to evidence obtained through U.S. discovery proceedings.  April Order, 583 B.R. at 816.  Accordingly, CohnReznick has not shown that it is likely to succeed on the merits of its appeal.

## II. Irreparable Injury

CohnReznick has also failed to show irreparable injury in the event its request for a stay is denied.  For example, CohnReznick has made no assertion that the documents sought by the Liquidators are privileged or otherwise protected by the

---

[13] CohnReznick also relies upon In re Condor Ins. Ltd., 601 F.3d 319, 326-27 (5th Cir. 2010), In re ABC Learning Centers Ltd., 728 F.3d 301, 306 (3d Cir. 2013), and an article, Allan L. Gropper, The Curious Disappearance of Choice of Law as an Issue in Chapter 15 Cases, 9 Brook. J. Corp. Fin. & Com. L. 152 (2014).  Neither case is contrary to the result here, but in any event both involve entirely different contexts.  As for the Gropper article, although CohnReznick cites it for the proposition that a bankruptcy court in Chapter 15 must apply lex fori concursus -- the law of the jurisdiction where the main insolvency proceeding is pending -- the article in fact concludes that "[n]o U.S. case has so held" that lex fori concursus governs.  Id. at 178.

trade secret or similar doctrine.  As the bankruptcy court

cogently explained below, a requirement to produce documents, at

least absent a claim of privilege or sensitivity, is not

generally the type of injury that is irreparable.  See Stay

Opinion at 96-97.

Moreover, as discussed above, CohnReznick did not provide

any analysis or evidence to the bankruptcy court demonstrating

that the Workpapers would not be discoverable in an arbitration,

should one ever be conducted, between these parties.  It relies

solely on the uncontroversial observation that discovery in

arbitration is generally more limited than that allowed in

bankruptcy proceedings and is subject to its own set of

procedures.  That unremarkable proposition does not suggest

irreparable injury.  CohnReznick had to demonstrate that

specific categories of documents would not be producible, and

that production of those documents would cause irreparable harm.

It has not.

CohnReznick asserts that it would suffer irreparable injury

because the issuance of a stay would moot its appeal of the

April Order.  This does not constitute irreparable injury.

While the Court of Appeals allows appeals from discovery orders

in Chapter 15 proceedings as an exception of the final order

rule for the reasons explained in In re Barnet, 737 F.3d at 244,

the right to appeal does not require a stay to be issued.  A

showing of irreparable harm requires more than the possibility of mootness, particularly because courts have the ability to fashion at least some form of relief if a discovery production order is reversed on appeal.  See United States v. Jicarilla Apache Nation, 564 U.S. 162, 169 n.2 (2011).

The reversal of discovery orders by the Court of Appeals is understandably rare, given the broad discretion granted lower courts in management of discovery.  The issuance of a stay of discovery pending a decision on appeal is even rarer.

The sole case cited by CohnReznick, In re Barnet, does not suggest a stay is appropriate here.  In Barnet, the bankruptcy court certified an appeal and the Court of Appeals stayed the entirety of the Chapter 15 proceeding while it addressed whether the debtor was statutorily authorized to proceed under that chapter.  Barnet, 737 F.3d at 241.  No comparable issue is implicated by this appeal.

## III. Injury to Other Parties

The bankruptcy court correctly found that the Liquidators would "suffer substantial injury if a stay were granted."  Stay Opinion at 97.  The Liquidators are facing the expiration of certain statutes of limitations in November 2018, id. at 98, and further delay of the production of the documents will impair their ability to investigate and bring claims prior to the expiration of the

20

limitations periods.  Id. at 98-99.  And, because of the criminal investigations and related proceedings against the former managers of the Funds, the Liquidators have few alternatives to obtain documents regarding the financial condition and affairs of the Funds but to seek documents from CohnReznick.  Id. at 99.  Among other things, the Workpapers will assist the Liquidators in linking transactions that appear in the financial statements with assets in the management accounts, and reveal witness statements to the auditors.  Stay Opinion at 21. Accordingly, this factor weighs strongly against granting a stay of the bankruptcy court's order pending appeal.

CohnReznick has no persuasive response to this analysis.  It observed that the bankruptcy court did not set a final date for production even though it denied the motion for a stay.  It nakedly asserts that the Liquidators' investigation of others will not be impeded because the CohnReznick papers reflect its own work and the Liquidators already have millions of other documents. These arguments may be swiftly rejected.  The bankruptcy court repeatedly expressed its belief that a prompt production of the subpoenaed records was critical.  See Stay Opinion at 98-99.  The bankruptcy court has now set a July 16 date for production of the Workpapers.

## IV. The Public Interest

Finally, this Court agrees with the bankruptcy court that the purposes underlying Chapter 15 and the sound administration of bankruptcy proceedings weigh firmly against a stay of the bankruptcy court's order pending appeal.  The sound administration of justice in federal courts counsels against interference with a court's discovery orders.  A stay on appeal of discovery orders delays litigation, adds uncertainty to the proceedings, and increases the costs of litigation.  Stays are rarely issued, even in appeals of § 1782 proceedings.  Staying discovery ordered by the bankruptcy court in a Chapter 15 proceeding should also be a rare outcome.

In the circumstances here, a stay would be particularly inappropriate.  The U.S. Government investigations accuse the Funds and their managers of engaging in a massive fraud.  Liquidators appointed by a foreign bankruptcy court are seeking assistance from this nation's courts.  The Liquidators face imminent expiration of applicable statutes of limitations.  The bankruptcy court is vested with broad discretion to grant access to discovery in order to fulfill the purposes of Chapter 15, and has exercised that discretion with great care.

**CONCLUSION**

The June 12, 2018 motion for a stay pending appeal of the bankruptcy court's April 17, 2018 Order is denied.

SO ORDERED:

Dated:    New York, New York
          June 29, 2018

                              _____
                                      DENISE COTE
                              United States District Judge